## THE PERE MARQUETTE 18.

### (District Court, E. D. Wisconsin. February 18, 1913.)

1. SHIPPING (§ 209*)—PETITION FOR LIMITATION OF LIABILITY—RIGHT OF CLAIMANT TO ANSWER.

Under admiralty rule 56 (29 Sup. Ct. xlvi), which provides that, in a proceeding by a shipowner for limitation of liability, any claimant of damages "who shall have presented his or their claim to the commissioner under oath, shall and may answer such libel or petition and contest the right of the owner or owners of said ship or vessel either to an exemption from liability or to a limitation of liability," a person who has not so presented a claim has no standing as a claimant to answer the petition.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

2. SHIPPING (§ 209*)—PROCEEDING FOR LIMITATION OF LIABILITY—ANSWER.

Where a petition for limitation of liability alleges the facts necessary to entitle the petitioner, under the statute, to the relief sought, the answer of a contesting damage claimant must be full, explicit, and distinct as to each separate article and separate allegation, as required by ad-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

miralty rule 27 (29 Sup. Ct. xlii), and, where a necessary statutory allegation of the petition is denied, the answer must state the facts on which the denial is based, and not merely bare denials or general conclusions of the pleader.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

3. SHIPPING (§ 209*)—PROCEEDING FOR LIMITATION OF LIABILITY—DEFENSES —RECOVERY OF INSURANCE.

That a shipowner recovered insurance on the loss of his vessel does not affect his right to a limitation of liability under the statute as against damage claimants.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

4. SHIPPING (§ 209*)—PROCEEDING FOR LIMITATION OF LIABILITY—SECURITY FOR COSTS.

Contesting damage claimants in a proceeding for limitation of liability must give security for costs, unless relieved therefrom on a proper showing of inability on account of poverty.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

In Admiralty. In the matter of petition of the Pere Marquette Railroad Company, as owner of the car ferry steamer Pere Marquette 18, for limitation of liability. On exceptions to answers. Exceptions sustained.

The petitioner, Pere Marquette Railroad Company, has filed a libel and petition, alleging its ownership of a car ferry steamer Pere Marquette 18, a duly enrolled and licensed merchant vessel employed in navigation upon the Great Lakes. On September 9, 1910, while on a voyage between the ports of Ludington, Mich., and Milwaukee, Wis., she met with disaster, sank, and with her cargo became a total loss, out of which were subsequently recovered certain articles belonging to her, life preservers, life raft, etc., valued at approximately $85.00. A description of the cars and their contents, constituting the cargo, and their respective owners, consignors, and consignees, the passenger list, names of officers and crew of the steamer at the time, also the names of passengers and members of crew killed or drowned in said disaster, are particularly set forth. It is also averred that because of the disaster no freight money was or could be earned on the voyage; such part, if any, as had been prepaid, being subject to refund. Suit has been brought by the representatives of one whose life was lost, claiming damages for such loss. Other actions will, unless restrained, be brought upon similar claims, which, if established, will greatly exceed the value of the steamer after such disaster, and of her pending freight.

In claiming the benefit of Revised Statutes, §§ 4283, 4284, 4285 (U. S. Comp. St. 1901, p. 2943), and asserting its desire in the proceedings thus instituted to contest its, and its steamer's, liability for any and all loss or damage resulting from said disaster, conformably to the general admiralty rule, the petitioner negatived in the language of the statutes the occurrence of the disaster and its consequent loss and damage through its or its managing officers' privity or knowledge, and upon information and belief gave the facts concerning the loss of the steamer as follows: "That its said steamer left the port of Ludington, Mich., on the evening of September 8, 1910, bound for the port of Milwaukee, Wis., with about 6 passengers on board, and laden with about 29 freight cars on its main deck in the usual and customary manner, and was then and at all times hereinafter mentioned stout, staunch, and strong, with her said cargo well and sufficiently stowed and secured, was well equipped, manned, and supplied, and in every respect fit for the sea and the voyage she was about to undertake; that while on Lake Michigan in the

course of said voyage she became waterlogged, and about 7:30 a. m. of September 9, 1910, the said steamer, being then about 20 miles off the port of Sheboygan, Wis., suddenly sank stern first in about 60 fathoms of water; that the cause of the sinking of said vessel has been carefully investigated by your petitioner, and your petitioner has been unable to ascertain, and does not know, the cause of said vessel taking in water and sinking as aforesaid, but your petitioner alleges that the sinking of said vessel was in no wise the fault or want of care on the part of your petitioner or those in charge of the navigation of said steamer."

The prayer is for a monition citing all claimants to appear before a commissioner and make due proof of their respective claims, to appear and answer the allegations of the petition, for an injunction restraining all other suits and proceedings except herein, for an adjudication of nonliability of the petitioner and its steamer for any loss, damage, or injury resulting in and from said disaster. And, if on final hearing liability be adjudged then that petitioner be permitted to surrender its right, title, and interest in the steamer and salvage therefrom and freight pending at the time of the disaster, and that liability be limited to the property so surrendered, and also, inasmuch as said voyage was not and cannot be completed, that no freight was pending or can be earned, and that all liability of the steamer and the petitioner otherwise existing be thereby and therethrough satisfied and limited, all in conformity with the general admiralty rules and the statutes in such case made and provided. Upon this petition a monition was issued, citing claimants to appear and make proof of their claims before the commissioner therein named; also to appear and answer the libel and petition. The order for the issuance of such monition restrained the prosecution of actions or proceedings to enforce claims, except in this proceeding.

Pursuant to the foregoing, claimants have appeared, some of them filing a separate claim before the commissioner, and also an answer to the libel and petition; others have filed answer seeking therein to contest the right to limit, and also to state grounds of liability. The petitioner has filed exceptions whose scope and purpose are particularly detailed in the opinion.

Van Dyke, Rosecrantz, Shaw & Van Dyke, of Milwaukee, Wis., for petitioner.

Glicksman, Gold & Corrigan, Harry N. Glicksman, Bloodgood, Kemper & Bloodgood, B. F. Saltzstein, and Chas. Friend, all of Milwaukee, Wis., for claimants.

GEIGER, District Judge (after stating the facts as above). [1] The first exception relates to the right of claimants to answer the petition without having filed a claim with the commissioner. Upon this, the fifty-sixth rule in admiralty (29 Sup. Ct. xlvi) seems decisive:

"In the proceeding aforesaid, the said owner or owners shall be at liberty to contest his or their liability, or the liability of said ship or vessel for said embezzlement, loss, destruction, damage or injury (independently of the limitation of liability claimed under said act), provided that, in his or their libel or petition, he or they shall state the facts and circumstances by reason of which exemption from liability is claimed; and any person or persons claiming damages as aforesaid, and *who shall have presented his or their claim to the commissioner under oath*, shall and may answer such libel or petition, and contest the right of the owner or owners of said ship or vessel, either to an exemption from liability or to a limitation of liability under the said act of Congress, or both."

This rule, in connection with rules 54 and 55 (29 Sup. Ct. xlv, xlvi), clearly contemplates that all claimants must, in obedience to the monition issued, present their claims to the commissioner in order to have

any standing or right of contest in the proceedings to limit liability. Such proceeding has for its object the bringing into the admiralty court all claimants, to the end that, if exemption is granted or liability limited, all will be bound. The right to contest is given to those who assert claims against which the proceeding to exempt or limit will, if successful, operate either as a bar or as the means of complete satisfaction. The petition for limitation calls for an answer which can, as hereinafter indicated, raise merely the limited issue respecting the owner's privity or knowledge in or to the causes of the disaster, and, probably, respecting the property offered to be surrendered—in any event to the necessary allegations required by statute to be set out as the foundation of the proceeding. Such issues, in the nature of things, must be first adjudicated. On the other hand, the claim for damages is treated as having the effect of a libel requiring allegations of fact which may have no relevancy to the exemption or limitation right. Thus, an owner may concede liability upon any ground except that of personal fault or privity, the absence of which alone entitles him to limitation. The issues, being thus distinct, must be set out in separate pleadings. Re Davidson S. S. Co. (D. C.) 133 Fed. 411. The jurisdiction of the admiralty court being comprehensive, all parties, if they come in at all, must be ready to recognize and submit to the accomplishment by the owner of both the primary and incidental purposes of the statute and the rules. Norwich Co. v. Wright, 13 Wall. 104, 20 L. Ed. 585.

The exception to the sufficiency of the denials contained in the pleadings of several answering claimants will be next considered. It is unnecessary to notice the separate exceptions to each of the answers, but those filed to the answer of claimant Schraufnagel will suffice to indicate petitioner's contention. Such exceptions relate to denials: (a) That the steamer was stout, staunch, seaworthy, etc.; (b) that the steamer became a total loss; (c) that only the articles specified in the petition were lost; (d) that no freight or passage money was or could be earned or that refund was necessary, that the cargo was covered by insurance whereby petitioner was reimbursed; (e) denies that the damage arose "without the privity or knowledge of petitioner or its managing officer," or "without fault on the part of the petitioner"; (f) or that the steamer was stout, strong, with her cargo well and sufficiently stowed and secure, or that the steamer was well manned, etc.; (g) or that the sinking was in no wise due to want of care on petitioner's part.

The exceptions further challenge affirmative allegations upon information and belief which doubtless seek to charge liability for damages: (h) That the sinking of the steamer and claimant's loss "proceeded directly and proximately from the fault and want of care of the petitioner"; (i) that the loss was due directly "to causes within the privity and knowledge of the petitioner and its managing officers"; (j) that petitioner carelessly and negligently failed and neglected to provide "claimant's intestate with a safe, suitable, or proper boat, * * * in that the boat was insecure, unseaworthy, and unequal to meet the perils of navigation and unsafely constructed so that water was liable to get into the hold and fill the boat"; (k) that defendant's

officers and agents "carelessly failed to properly navigate the boat" and to inspect her; (!) and negligently permitted her and her engines, machinery, appliances, and equipment to be insufficient and defective.

[2] The several denials to which exception is thus taken disclose the same infirmities as were considered in Re Davidson S. S. Co., supra, where Judge Seaman observed:

"The denial in each instance assumes knowledge or information on the part of the respondent that the facts and circumstances were not as alleged in the petition in certain of the essentials imposed by statute, but withholds disclosure of such information. Thus the denial to which the first exception is taken is the sole answer to the jurisdictional allegations that the Sacramento was at the time of the collision 'stout, staunch, strong and seaworthy, well and properly manned and equipped and had on board a full and complete complement of officers and crew,' etc. The answer must be full, explicit, and distinct (rule 27 [29 Sup. Ct. xlii]), and the requirement is not met by denial alone. The Commander in Chief, 1 Wall. 43, 17 L. Ed. 609. If the party answering is uninformed in the premises, he may so state, and thus raise the issue without denying; but a denial must be founded on information, and, possessing that, the pleader must state the facts accordingly upon information and belief."

In the case at bar, a denial, for example, that the disaster occurred without the fault or privity of the petitioner's managing officers, and the affirmative allegation that it occurred through their neglect, or was due to causes within their knowledge or to which they were privy, necessarily imply or assume knowledge or information on the part of the answering claimants, of some particular fault, cause, or act of neglect chargeable to them. The negation by the petitioner of privity or fault, likewise its recital of the manner of disaster's occurrence, are at the foundation of its right to exemption and limitation; and, as indicated in the Davidson Case, can be met in pleading only by alleging facts showing privity in fault, or by a disavowal of knowledge, which latter will put the petitioner to its proof. Under the principles of equity pleading, which afford a proper test in the admiralty court, the answers are clearly insufficient, as may be demonstrated by a brief consideration of analogous situations. If an administrator or trustee, seeking a settlement of his accounts and a discharge, should aver that he "had fully administered the trust estate," no one would contend that an express denial thereof would be sufficient to raise an issue; and in actions at law it is familiar doctrine that the denial of a negative averment creates no issue unless coupled with an affirmative averment of facts which of themselves disclose an inference putting the negative averment in issue.

As indicated, therefore, unless the answering claimants are content to put the petitioner to its proof by disavowal of knowledge respecting the truth of the averments of the petition, they cannot by denial alone meet its negative averment, and thereby charge that the loss or damage did occur through an act to which petitioner's managing officers were personally privy. The rule is of utmost importance to the petitioner, because the "privity of knowledge" which will defeat it means the personal fault of the owner or officers, and not that of agents or servants which, in other situations may be imputed so as to create liability. Hence, unless apprised of the act or acts of personal fault claimed to be chargeable to its officials, naming them, it can have no means of

preparing for trial or to meet its adversaries—unless it accurately conjectures and prepares to meet all possibilities. This, in effect, would require the trial to proceed without issues presented by the pleadings.

So, too, the affirmative allegations of the answers—and which seem to commingle matters going to defeat the right to limit liability with matters upon which a claim for damages may be founded—are properly subject to exception. As indicated in the Davidson Case, these claims are pleadings in the nature of libels, and as such must set out the "facts upon which the claimant relies in support of his suit in accordance with rule 23 [29 Sup. Ct. xli]." For example, allegations that petitioner "breached and violated its duties to" claimant's intestate, which "proximately and directly caused the loss of life," and that "the sinking of the said steamer as aforesaid and the loss of life * * * proceeded directly and proximately from the fault and want of care of the petitioner, * * * and was due directly to causes within the privity and knowledge of petitioner and its said managing officers," all fail to meet that degree of fullness and particularity required, not only by the admiralty, but by other rules of pleading. They are not allegations of fact, but merely the ultimate conclusions of the pleader, predicated upon facts presumed to be in his possession, and of which his adversary can demand disclosure. The Commander in Chief, 1 Wall. 43, 17 L. Ed. 609; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104; Young v. Lynch, 66 Wis. 514, 29 N. W. 224.

Equally insufficient are the allegations that the steamer "was insecure and unseaworthy and unequal to meet the perils of navigation, and was unsafely constructed so that water was likely to fill the hold of the said boat and cause it to sink, * * * and that the officers, agents, and servants * * * carelessly and negligently failed to inspect the same and to repair"; "that the engines, appliances, machinery,. and equipment" were so "defective and insufficient that the boat was caused to sink." These are mere general conclusions, apprising petitioner of no fact showing negligent construction, unsafe condition, or a breach of duty upon which liability could be predicated.

[3] Nearly all the answering claimants allege petitioner's recovery of insurance upon the lost steamer. The statute provides for a limitation of the owner's liability, to his interest in the vessel and her freight. The insurance fund arises upon a collateral contract of indemnity for the loss of such interest; but neither the contract of insurance nor the fund is the equivalent nor in any sense takes the place of the interest of the owner in the vessel. The City of Norwich, 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134. Hence the recovery of insurance cannot be relevant to the right to proceed or to obtain relief under the act.

[4] The petitioner insists that the answering claimants be compelled to furnish security for costs. In Rawson v. Lyon (D. C.) 15 Fed. 831, Judge Brown thus states the rule:

"There is no question that the ordinary practice in admiralty has long been to require a stipulation for costs from a respondent on entering his appearance and answering in an action in personam. Judge Betts, in his book on Admiralty Practice, says: 'This stipulation must be filed when a defendant comes into defend, although the first process was a citation and not a warrant.' Page 40. This is in accordance with the ancient practice. Clerke, Praxis, tits. 5, 11; Pharo v. Smith, 18 How. Prac. 47 [Fed. Cas. No. 11,062].

When suits were commenced by warrant, rule 17 of this court [17 Sup. Ct. xl] expressly required bail to be taken for $100 above the sum claimed; and this was to cover costs. When warrants were abolished by Supreme Court rule 48 [29 Sup. Ct. xliv] as the ordinary process for commencing actions, rule 17 was no longer expressly applicable to ordinary suits in personam; but the ordinary practice in this court to give security has remained as before, although it appears to have been occasionally omitted.

In all other cases, libellants and defendants and interveners are by express rules required to give security for costs, except in the special cases of seamen, salvors, or persons suing in forma pauperis. Rules 17, ·38, 44, 45 [29 Sup. Ct. xl. xliii. xliv]. There is no reason why the defendants in actions in personam should form an exception to the usual requirement to file security for costs, which, under the former process by warrant, was always obtainable."

It is contended by answering claimants that, in admiralty, security should not be required where inability to give. it is shown. But the practice seems to be quite uniform in recognizing, as exceptional, only cases of seamen, salvors, or persons suing in forma pauperis; and admiralty rules 25, 26, 34 [29 Sup. Ct. xli, xlii], and 63 of this court seem to be in accord with the observations in the Raymond Case, supra.

In a proceeding for limitation of liability, Judge Lacombe expressed the following views respecting the subject:

"In view of the large number of these causes which seem to be pending in this court, the subject of requiring security for costs has been again considered. There is force in the contention of defendant that, inasmuch as the statutory limitation of liability (the steamer being a total loss) relieves it from all liability for faults of navigation, etc., the plaintiff's case is more than ordinarily speculative. Undoubtedly, the taking of testimony in support of and in opposition to the averments in the complaint will be an expensive matter; and the court is not unmindful of the fact that those averments are really not sworn to by any one, the usual verification being on information and belief. Nevertheless, individuals who may have a right to recover damages for the death of the next of kin should not be deprived of their day in court to show, if they can, that defendant's actionable negligence caused such death merely because they are too poor to file security. On the other hand, the defendant should not be harrassed by repeated trials of the same question nor put to unusual and extraordinary expense in defending suits, the prosecution of which is left free to its adversaries. The following disposition of these and similar motions will be made: Where the affidavits clearly show that the persons interested in the recovery (i. e., the widow or next of kin) are all in such a condition pecuniarily that none of them is able to give security, the motion will be denied; otherwise it will be granted. The denials, however, are to be without prejudice to a renewal of the motion in the event of defendant prevailing on the trial of the first cause. If security be then exacted, defendant will thereafter be harrassed only by litigants who deal with it on equal terms." Raymond v. La Compagnie Generale, etc. (C. C.) 90 Fed. 105.

It thus appears that the discretion, if any is to be exercised, is limited to those cases where the party is suing in forma pauperis, and in which, in the language of rule 63 relating to the issuance of process, it must be. disclosed to the satisfaction of the court that "by reason of poverty, or other cause shown" the party "is unable to obtain a responsible surety to stipulate for costs." The proctor of claimants Schraufnagel, Trace, and Renner has filed his affidavit upon information averring, not inability to give security, but that "claimants

are persons of meager financial ·ability and unable without great hardship to furnish a stipulation or security for costs." The claimant Threehouse, as special administratrix claiming liability of the petitioner for loss of life of her intestate, has filed the affidavit of her proctor upon information and belief, averring that said intestate left no property and that claimant is dependent upon others for her support, and has no property, etc. These are manifestly not in compliance with the rules.

The conclusions are:

(1) That the specific exceptions to the answers of the claimants Schraufnagel, Rosecrans, Renner, Trace, • Brown, and Threehouse challenging (a) the right to answer the petition for limitation without having first filed a claim with the commissioner, and (b) the right to combine in a single pleading, a claim for loss or ·damage, and an answer to such petition, are sustained.

(2) That exceptions numbered 2 to 5. inclusive, to the answer of Schraufnagel, 2 and 3 to the answer of Brown, 2, 3, and 4 to the answer of Trace, 2, 3, and 4 to the answer of Renner, 3, 4, and 5 to the answer of Rosecrans, 2, 3, and 4 to the answer of Threehouse, are all sustained.

(3) That the exceptions to the affidavits respecting the giving of security for costs are sustained; and all claimants are required to give such security unless relieved therefrom upon proper showing.

Consideration of exceptions to claims filed with the commissioner will be reserved until all claimants shall file their claims pursuant to the ruling herein made, should they elect to do so.

Orders may be entered accordingly.